Filed 04/23/24

VERMONT SUPERIOR COURT
Essex Unit
75 Courthouse Drive
Guildhall VT 05905
802-676-3910
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-02845

## James Gibbons, Jr. v State of Vermont

## ENTRY REGARDING MOTION

Title:       Motion to Dismiss; Motion for Summary Judgment Complaint;  (Motion: 5; 8)
Filer:       James F Gibbons, Jr.; State of VermontVincent Illuzzi
Filed Date:  May 12, 2023; February 09, 2024

The motion is GRANTED IN PART and DENIED IN PART.

The present matter is a petition for Post-Conviction Relief filed by Petitioner Gibbons under 13 V.S.A. § 7131 seeking to set aside his plea agreement and sentence in docket number 21-CR-5443 for domestic assault under 13 V.S.A. § 1042.[1]  Both Petitioner and the State have filed motions for judgment on the pleadings and exhibits.  For the reasons noted below, the Court grants summary judgment in favor of the State and finds no legal or factual basis to disturb the June 21, 2022 plea agreement and sentence in this matter.

*Undisputed Material Facts*

Based upon the exhibits and transcripts supplied by the parties, the following facts are undisputed.  Petitioner is a resident of Indiana who came to Vermont in 2021 at the behest of his half-sister, Helena Murphy.  At the time Ms. Murphy was carrying for her and Petitioner Gibbons' mother, Helen Haas-Bushong.  Ms. Haas-Bushong was in failing health and was dependent at all times on an oxygen machine that fed a constant flow of oxygen into her lungs.  On July 3, 2021, Mr. Gibbons, while in Ms. Murphy's home, became enraged.  During this moment, Mr. Gibbons unplugged his mother's oxygen machine.  The disconnection was only momentary as Ms. Murphy

---

[1] Petitioner Gibbons was also charged in the same docket with unlawful mischief under 13 V.S.A. § 3701 for slashing Ms. Murphy's tires and breaking a side, rear-view mirror on her car.  Mr. Gibbons entered a guilty plea to this charge on June 21, 2022 at the same plea colloquy as the domestic assault, but he does not challenge this portion of his plea agreement and sentence.

was close by. She re-connected the machine and told Mr. Gibbons to leave, locking him out of the house.

Police were called to the scenes, and the investigating officer took statements that became the basis for the charging affidavit. These statements included statements from Petitioner's sister, Ms. Murphy, and from Petitioner's mother, Ms. Haas-Bushong. Ms. Murphy detailed that the incident had begun as an argument over Ms. Hass-Bushong's life insurance policy, and Petitioner's frustration with what funds might be available. She also stated that Ms. Haas-Bushong's oxygen was critical to her and that a deprivation of even 45 seconds could be life-threatening. Ms. Bushong made the statement that she saw Petitioner unplugging her oxygen tube and telling her that he wanted her to die. On July 7, 2021, the State's Attorney charged Gibbons with aggravated domestic assault under 13 V.S.A. § 1043. This charge was a felony and depended, in part, on statements from Murphy and from Haas-Bushong, and their then-stated belief that Gibbons intentionally unplugged the oxygen machine and intended to seriously harm or kill Haas-Bushong.

In early June 2022, following discovery and pre-trial process, the parties informed the Court that they had reached a plea agreement. As part of this plea agreement, the State amended the information dismissing the felony charge of aggravated domestic assault for a misdemeanor charge of domestic assault under 13 V.S.A. § 1042.

This change in charges created two differences. First, the penalties for aggravated domestic assault under Section 1043 include imprisonment up to 15 years and a $25,000 fine. The penalties for domestic assault under Section 1042 are lower with only up to 18 months imprisonment and a $5,000 fine. Second, the level of proof required under each charge is different. Under aggravated domestic assault, the defendant must be shown to have either attempted or caused serious bodily injury to a family member in a willful or reckless manner. 13 V.S.A. § 1043(a)(1). Under domestic assault, the defendant must be shown to have attempted or caused bodily injury in a willful or reckless manner. 13 V.S.A. § 1042.

At the plea colloquy, the Court reviewed the charges and penalties with Defendant and explored whether he was entering into the plea agreement in a voluntary and intelligent manner. This process substantially complied with the technical requirements of Rule 11(c) and (d) in establishing the basis for the charges, the plea agreement, and whether this act was being done voluntarily. *In re Pinheiro*, 2008 VT 50, ¶¶ 10, 15 (noting that the Court applies a substantial compliance standard around V.R.Cr.P. 11(c) and (d) when reviewing plea colloquies).

Where the plea colloquy became complicated came during the portion where the court reviewed the factual basis for Petitioner Gibbons' guilty plea under Rule 11(f). When the State's Attorney recited the investigating officer's affidavit, Petitioner responded in two ways.

First, Petitioner Gibbons disputed whether the affidavit included a statement from his mother recounting Gibbons' unplugging of her oxygen tube and telling her that he wanted her to die. (Ex. B, Plea Trans. at 26: 25–27:20.) Once this statement was confirmed to have been included in the report, Gibbons dropped his objection and challenge to the statement.[2]

Second, when asked by the court if he agreed with the factual allegation that he unplugged his mother's oxygen tubes, Gibbons resisted answering the question. He denied remembering the incident, stated that the charge was B.S., but he eventually reconciled himself to the allegation and admitted to the act and plead guilty. (Id. at 28:14–31:9.)

After the entry of the plea colloquy, the Court allowed Ms. Murphy to address the court in what was intended as a victim impact statement. Instead, Ms. Murphy stated that she did not believe Petitioner intended to kill or harm his mother. She stated that the oxygen lines were unplugged for less than a minute; that there was no harm done; and that Ms. Haas-Bushong was not even aware of the disconnection. Ms. Murphy stated a strong disagreement with prosecution of her brother and felt it was a travesty of justice since she attributed his actions to stress, emotion, and possible emerging mental health issues. (Id. at 32:8–36:17).

After Ms. Murphy's statements, the Court then entered a sentence against Petitioner that consisted of 18 months with 340 days credit for time served, and the remainder suspended. No monetary fine was imposed, and no restitution ordered.

*Legal Analysis*

Petitioner's primary arguments in this PCR are two-fold. First, he contends that Ms. Murphy's statements to the Court demonstrated that he was not guilty and should have nullified the plea agreement. Second, he asserts that his defense attorney provided ineffective assistance of counsel in failing to discovery Ms. Murphy's statements prior to the plea agreement and for failing to use Ms. Murphy's statements as a basis to set aside the plea agreement and charges.

The standard of review in considering a challenge to a voluntary plea agreement is to determine whether by a preponderance of the evidence there were fundamental errors that rendered

---

[2] Between the incident and the date of the plea agreement, Ms. Haas-Bushong had passed away. It is not known if there had been a preservation deposition or other record of her statements outside of the officer's affidavit.

the conviction defective. *State v. Bowen*, 2018 VT 87, ¶7. Under Rule 11(f), the Court must be persuaded that the charge was factually supported. *In re Bridger*, 2017 VT 79 ¶¶ 20–23. There must be an "adequate factual basis" sufficient to demonstrate voluntariness. Id. at ¶ 21.

In this case, there is no reasonable dispute about the following: (1) Petitioner and Ms. Haas-Bushong were family members. (2) on July 3, 2021, Petitioner was at Ms. Murphy's house where Ms. Haas-Bushong was residing. (3) Ms. Haas-Bushong relied on oxygen supplied to her through a machine and without this supplemental oxygen, she would quickly expire or suffer harm withing 45 seconds. (4) On July 3, 2021, Petitioner disconnected Ms. Haas-Bushong's oxyen tube. (5) He did not disconnect this tube by accident. (6) Ms. Murphy became aware of Petitioner's action and reconnected Ms. Haas-Bushong's oxygen tube and kicked Petitioner out of the house.

Neither Petitioner's uncertainty, nor Ms. Murphy's post-plea statements alter these facts or call them into serious question. While Ms. Murphy's statements do contradict portions of the arresting officer's affidavit, the issues are not relevant to the charges under 13 V.S.A. § 1042. Under this statute, the state need only provide that Petitioner acted in either a willful or reckless manner to cause or attempt to cause bodily harm to a family member. The fact that Ms. Haas-Bushing might not have been immediately aware of the harm or threat to her oxygen is irrelevant. Similarly, the fact that Petitioner did not intend to kill or seriously hurt Ms. Haas-Bushing is not necessary to the charge. The level of intent necessary to establish domestic assault is either intentional or reckless. Under the facts, there was sufficient evidence to show that, at the very least, the act of disconnecting his mother's oxygen was a reckless action because it was all but certain to lead to harm and would have but for the intervention of Ms. Murphy. Under Vermont law an action taken that consciously disregards a substantial and unjustifiable risk constitutes reckless and satisfies the standard. *State bv. Harrington* , 174 Vt. 584, 585 (2002) (affirming conviction for domestic assault under reckless standard where defendant swung his hand at the victim "—regardless of whether he intended to strike the blow"). In this case, the evidence—including Ms. Murphy's statement—is that Petitioner pulled his mother's oxygen tube, such an action disregarded the substantial and unjustifiable risk that she would sustain harm from deprivation of her supplemental oxygen supply.[3] On this basis, the Court is persuaded that was more than sufficient evidence for the plea agreement and that the court

---

[3] Thus, even to the extent that Ms. Murphy's statements in the plea agreement hearing were considered new evidence, the information is insufficient to undermine the adequate factual basis of Petitioner's guilty plea.

complied with its obligation under V.R.Cr.P. 11(f). For these reasons, the State is entitled to summary judgment on Petitioner's Rule 11(f) challenge in his present PCR.

The remaining question centers on whether Petitioner's attorney provided effective assistance of counsel in reaching this plea agreement. The Vermont Supreme Court has held that an ineffective assistance of counsel claim must show that counsel's performance was not only deficient, but that "there is a reasonable probability that, but for counsel's unprofessional errors, the proceedings would have resulted in a different outcome." *In re Kolts*, 2024 VT 1, ¶ 14 (quoting *In re Grega*, 2003 VT 77, ¶ 7). In the present case, Petitioner's argument against counsel mirrors his challenges to the plea agreement. The allegation is that his defense counsel did not prepare for or seize upon Ms. Murphy's statements. Nothing in the record suggests a different outcome. As noted above, Ms. Murphy's statements only confirm that Petitioner was the one who pulled his mother's oxygen tube. While Ms. Murphy's statements might suggest that Petitioner's actions were not entirely willful, they do not alter the finding that they were reckless and caused harm. As such, Petitioner cannot point any preponderance of the evidence to suggest a different outcome but for the actions or inactions of his attorney.

To the extent that Petitioner seeks to introduce the possibility that he could have successfully defended against the charges if he had gone to trial, this is pure speculation and outside the scope of this Court's review. *In re Kolts*, 2024 VT 1, at ¶¶ 20–22 (consideration of potential outcomes—including trial where petitioner elected for a plea agreement is improper). For these reasons, Petitioner's ineffective assistance of counsel claims are **Denied.**

## ORDER

Based on the foregoing, Petitioner's motion for summary judgment is **Denied.** The State's cross motion for judgment is **Granted**. The plea agreement and sentence are affirmed, and the present PCR petition is **Dismissed.**

Electronically signed on 4/22/2024 3:31 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge